STEWART, APPELLANT, *v.* YOUNG, ADMR., BUREAU OF WORKMEN'S COMPENSATION, ET AL., APPELLEES.*

(No. 1537—Decided June 28, 1960.)

*Mr. R. N. Larrimer* and *Mr. Craig Aalyson*, for appellant.
*Mr. Mark McElroy*, attorney general, *Mr. Thomas J. Zuber*, and *Messrs. Porter, Stanley, Treffinger & Platt*, for appellees.

MIDDLETON, J. The plaintiff, appellant herein, was an employee of The Galion Iron Works & Manufacturing Company at the time he received the claimed injury which is the basis of his action to participate under the workmen's compensation law of Ohio.

This cause came on for trial before a jury in the Common Pleas Court of Crawford County, and at the conclusion of plaintiff's testimony the court, on motion of the defendants, directed a verdict in favor of the defendants.

*Motion to certify the record overruled, January 18, 1961.

In brief, the plaintiff, in his petition, avers that on March 18, 1954, while in the usual course of his employment for The Galion Iron Works & Manufacturing Company, he "sustained an acute dilatation of the heart, and damage to the heart muscle, as the result of overexertion, while attempting to unload a wheelbarrow, when the wheelbarrow started to overturn and as a result of the overexertion in attempting to keep it from overturning, he sustained acute dilatation of the heart and was thrown into heart decompensation, and sustained an aggravation of his pre-existing heart condition."

Upon direct examination, the plaintiff, in describing the occurrence, testified in part as follows:

"Q. What did happen? A. Well, I was—a wheel load, wheelbarrow of dirt across from the—We call it the new shop.

"Q. Now just a moment, please. When you say 'dirt' do you mean soil? A. Yes. Soil and floor sweepings and stuff like that.

"Q. Where had you gotten this wheelbarrow load of dirt? A. Well, we call it the new shop. Across the street from the—

"Q. All right. Go on. What happened? A. Main office. Well, I unloaded this wheelbarrow. There had been quite a bit of muddy weather and bad weather outside and they had been running graders backwards and forwards into the shop and accumulated a lot of mud and dirt and stuff, and I swept up with this wheelbarrow and loaded it and took it across the street and went to dump it into the container, and when I went to lift it up to dump it, why, it tipped over sideways. You know. I didn't want it to go onto the floor because I'd have to shovel it all up and clean the floor up around there, so I struggled with it to hold it upright to keep if from going over, and in the meantime in the struggle with it, why, it eventually got away from me and it upset onto the floor. Well, in struggling with that, why, I got an awful pain in my chest and, well, I didn't even bother the dirt or anything. Why, I just—when that struck me, why, I just set down."

"Q. And as I understand it, you approached the pan and attempted to take the wheelbarrow and go up like that (indicating). Is that right? Push it up? A. Right.

"Q. You could, isn't it true, Mr. Stewart, have taken the

wheelbarrow up beside the pan and turned it sideways? Isn't that right? A. Well, I don't know. It depends on how much dirt was in that pan.

"Q. All right; but you had on occasion taken the wheelbarrow beside the pan and turned it sidewise; am I right? A. I have. Yes.

"Q. And on this occasion you were not going to turn it sideways, though; you were going to go up and over with it, is that right? A. That's right. Up.

"Q. And that as you got the wheelbarrow up, it began to turn; is that right? A. Right.

"Q. And as I recall, either from your testimony this morning or on the deposition, it turned to the left; am I right? A. You're right.

"Q. And the dirt started to spill out. Is that correct, sir? A. That's correct.

"Q. And that you attempted, by exerting pressure on your right hand, you attempted to right the wheelbarrow; is that correct, sir? A. That's correct.

"Q. But you were unable with your right hand, by exerting pressure, to keep the wheelbarrow from turning to the left and it went on over; is that right, sir? A. It turned over; yes.

"Q. And in your years, Mr. Stewart, you have had wheelbarrows turn over before, haven't you? A. Yes, I've had wheelbarrows turn over.

"Q. All right. And on this particular occasion you came up to dump it up over the front of the wheelbarrow, it started to turn to the left, you attempted to exert pressure with your right hand on the right handle and it kept on going and dumped onto the ground. Am I right sir? A. You're right.

"Q. All right. Now, outside of the pain that you had at that time, Mr. Stewart, have I described this accident accurately? A. As far as I know, you have, yes."

It is a fact well recognized that one operating a wheelbarrow must exercise care to prevent it from tipping over either to one side or the other. This is common knowledge and apparent whenever a wheelbarrow is used. Having only one wheel in front, the wheelbarrow can be kept in balance and prevented from overturning only by the exertion of pressure on one or the

other of the two handles, so that the fact that the plaintiff was required to exert upward pressure to his left hand and downward pressure to his right hand in his unsuccessful attempt to prevent the dirt from going out the left-hand side was not unusual but could be anticipated by reason of the construction of a wheelbarrow. The plaintiff also testified that similar occurrences of the tipping of the wheelbarrow had happened to him before.

In the case of *Dripps* v. *Industrial Commission*, 165 Ohio St., 407, it is stated in the syllabus as follows:

"1. The term, 'injury,' as used in the Ohio Workmen's Compensation Act, comprehends a physical or traumatic damage or harm accidental in character and as a result of external and accidental means in the sense of being the result of a sudden mishap, occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place.

"2. The fact that a workman is injured by exerting more effort or being subjected to a greater strain than is customary in the performance of his work is not in and of itself sufficient to entitle such workman to participate in the State Insurance Fund; and before such participation may be had it must appear that such increased effort or strain was occasioned by some sudden mishap or unusual event."

See, also, *Artis* v. *Goodyear Tire & Rubber Co.*, 165 Ohio St., 412.

Any injury resulting from the occurrence as claimed by the plaintiff was not the result of a sudden mishap occurring by chance unexpectedly and not in the usual course of events.

The latest announcement by the Supreme Court that we find is in the case of *Carbone* v. *General Fireproofing Co.*, 169 Ohio St., 259, wherein the court, in a *per curiam* opinion, states the law to be:

"The determinative question now before the court is whether the claimant sustained an injury within the contemplation of the Workmen's Compensation Act. This court is of the opinion that she did not. The alleged injury suffered by claimant was not a physical or traumatic damage or harm accidental in character and as a result of external and accidental means in the sense of being the result of a sudden mishap, occurring by

chance, unexpectedly and not in the usual course of events, at a particular time and place. The fact that claimant exerted more force in lifting the metal plate than was ordinarily required in the course of her work does not entitle her to recover workmen's compensation.''

In the opinion of the court, the evidence of the plaintiff failed to show any accident which could support plaintiff's claim to recover compensation under the Workmen's Compensation Act and that the court did not err in granting the motion of the defendants for a directed verdict at the conclusion of the plaintiff's case.

*Judgment affirmed.*

YOUNGER, P. J., and GUERNSEY, J., concur.